McMILLAN, Judge.
The appellant, Carrie Manning White, appeals her conviction for possession of burglar’s tools, a violation of § 13A-7-8, Code of Alabama 1975. She was sentenced to 20 years’ imprisonment and was ordered to pay $50 to the crime victims compensation fund.
The evidence presented by the State tended to show the following: Mrs. Mildred Chavis testified that, on June 29, 1992, she was going shopping at a Kroger grocery store, in Northport, Alabama. She testified that as she drove into the parking lot she observed a black woman, Renee Gray, pick up a black change purse. She testified that Gray asked her if the purse belonged to her. Chavis testified that Gray opened the purse, revealing a large roll of money that appeared to be authentic. Chavis testified that Gray asked her to be a witness to the fact that she had not tampered with the money. Chavis testified that after she told Gray that she would be a witness, Gray asked her to accompany her to a nearby bank, where she said she was employed, so that she could turn in the money. Chavis testified that she agreed to do so. She testified that the appellant, Carrie White, then appeared “out of nowhere.” Chavis testified that as Gray started walking toward the bank, the appellant suggested that Gray should go to the bank by herself. Chavis testified that she did not see Gray go into the bank. Shortly thereafter, Gray returned and asked Chavis if the three of them could get in her ear. Chavis testified that when she told them “No,” they went to a nearby restaurant to discuss the money. Chavis testified that she became suspicious when Gray told her that there were several thousand dollars in the purse and that they could have all of it if they paid taxes on it. She testified that Gray said that the taxes on the money would amount to thousands of dollars. Chavis testified that she then told them that she did not have that kind of money and left the restaurant. She testified that she later reported the .incident to a Kroger employee.
Geraldine Mayo, a Kroger customer, testified that she observed the entire incident and thought that “Mrs. Chavis was being flimflammed.” After reporting the incident to Kroger employees, Mrs. Mayo telephoned “911” but lost sight of the women when they went inside the restaurant. Mrs. Mayo testified that she observed the appellant and another woman, who was later identified as Renee Gray, walk out of the restaurant and get in a grey vehicle that she identified for the police.
Officers Janice Hagler and Erin Sapp of the Northport Police Department testified that they stopped the vehicle in which the appellant and Gray were riding. They both testified that a black change purse and a roll of fake money was recovered from that vehicle.
The issue presented is whether a roll of fake money can be considered a burglar’s tool. Section 13A-7-8, Code of Alabama 1975, provides:
“(a) A person commits the crime of possession of burglar’s tools if he:
“(1) Possesses any explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking; and
*1017 “(2) Intends to use the thing possessed in the commission of an offense of the nature described in subdivision (a)(1) of this section.
“(b) Possession of burglar’s tools is a Class C felony.”
In addressing what constitutes a burglar’s tool, this court, in Burrell v. State, 429 So.2d 636, 639 (Ala.Cr.App.1982), held:
“[I]f the language of § 13A-7-8 were construed to require that ‘burglar’s tools’ be especially manufactured and designed for burglarious purposes, it would be almost impossible to convict because very few, if any, tools are manufactured for burglarious purposes. It is, however, difficult to enumerate any tool used in legitimate industry that cannot be used by burglars ‘from the bungler to the expert.’ State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938 (1936). Restricting the application of § 13A-7-8 to only those tools specifically and especially designed for burglars would emasculate the statute.”
As this court noted in Burrell, § 13A-7-8 is written in such a way as to include any object and or device that could be used in the “commission of an offense involving forcible entry into premises or theft by a physical taking.” A few illustrations of items that have been held to constitute burglar’s tools are: a ballpeen hammer, nail-prying tool, and screwdriver in Burrell; a tire iron in Petite v. State, 520 So.2d 207 (Ala.Cr.App.1987); a lug wrench in Poole v. State, 505 So.2d 1065 (Ala.Cr.App.1986); a hammer and a crescent wrench in McGlon v. State, 504 So.2d 745 (Ala.Cr.App.1987); and a sledge hammer in Scott v. State, 491 So.2d 1094 (Ala.Cr.App.1986).
Although § 13A-7-8 must be broadly interpreted in order to effectuate the legislative intent in enacting the. statute, if possible, after reviewing the unambiguous language of § 13A-7-8, and the various cases applying the statute, we conclude that the State’s argument that a roll of fake money constitutes a burglar’s tool cannot withstand serious scrutiny. A roll of fake money could in no fashion be used to effectuate a theft by physical taking.
Therefore, the trial court’s judgment is reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.